UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

BRASHARD DELANEY,

               Plaintiff,

v.

SARA SCHROEDER et al.,

               Defendants.

_____/

Case No. 2:24-cv-172

Honorable Maarten Vermaat

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 3.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Further, under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21.

Applying these standards, the Court will drop Defendants VanAcker, John Doe Sgt. #1, John Doe Sgt. #2, and Kessler (initially named as Pressler) as misjoined and dismiss Plaintiff's claims against them without prejudice. The Court will also partially dismiss Plaintiff's complaint for failure to state a claim as detailed below.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

<u>**Discussion**</u>

**I.      Relevant Procedural History and Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility.

On October 11, 2024, the Court received a document from Plaintiff titled "affidavit." (ECF No. 1.) In that document, Plaintiff avers that he suffers from chronic asthma, which he has treated with two different prescription inhalers. (*Id.*, PageID.1.) On August 30, 2024, Plaintiff arrived at MBP.[2] (*Id.*) He was "emergency transferred" there from Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. (*Id.*) Plaintiff was transferred "for staff assault and possession of a weapon." (*Id.*) Plaintiff states that he was found guilty of fashioning a weapon out of his inhaler. (*Id.*)

Plaintiff's property was not transported with him; it arrived on September 11, 2024. (*Id.*) It did not include his inhalers.[3] (*Id.*) On September 15, 2024, Plaintiff requested a new inhaler. (*Id.*, PageID.2.) On September 19, a nurse brought an Albuterol inhaler with her to "med-line." (*Id.*) Plaintiff notes that he participates in med-line three times daily because he receives regular treatments for diabetes. (*Id.*) The nurse advised Plaintiff that she could not give him the inhaler unless he turned in an old one. (*Id.*) Plaintiff explained that he did not have an inhaler to exchange. He asked if the nurse could simply bring the inhaler to med-line so that he could use it and immediately return it. (*Id.*)

---

[2] Plaintiff's affidavit averment states that he arrived on September 30, 2024, but the chronology of events subsequent to his arrival suggests that he actually arrived on August 30, 2024. Later submissions confirm that arrival date. (First Am. Compl., ECF No. 4, PageID.20.)

[3] It is unlikely that Plaintiff expected to receive the inhaler that had been fashioned into a weapon; thus, it appears that Plaintiff hoped to receive his other inhaler with his property.

The nurse brought the inhaler during med-line on September 21, and Plaintiff used it and returned it. (*Id*.) The next day, however, Plaintiff was informed that "Pharmacy confiscated [the] inhaler until Plaintiff produces [his] old inhaler he can not use [a new inhaler]." (*Id*.) Because Plaintiff had no inhaler to return, he could not receive treatment from an inhaler during med-line.

Plaintiff reports that he typically experiences asthma attacks in the middle of the night more than three times a week. (*Id*., PageID.3.) On September 25, Plaintiff filed a grievance against MBP Health Unit Manager Charles Scott, to no avail. (*Id*.)

On September 27, at 4:00 a.m., Plaintiff told MBP Sergeant Neubecker that he was suffering a bad asthma attack. (*Id*., PageID.4.) Sergeant Neubecker indicated she would call health care. (*Id*.) Health care personnel never arrived. (*Id*.) Plaintiff claims that is the pattern when he complains of asthma attacks. (*Id*.)

On October 3, Plaintiff kited MBP Warden Schroeder and explained the problem. (*Id*.) That same day, Plaintiff filed his affidavit asking the Court to impose a preliminary injunction compelling Defendants Schroeder, Scott, and an unidentified MBP doctor to provide treatment, in the form of his prescribed medications, for Plaintiff's chronic asthma. (*Id*.) The Court construed Plaintiff's affidavit as a complaint.

Before the Court completed its preliminary review of Plaintiff's complaint, Plaintiff filed a first amended complaint, which significantly expanded the scope of the lawsuit. (ECF No. 4.). In the first amended complaint, Plaintiff sues the following MBP personnel: Warden Sara Schroeder; Assistant Deputy Warden Michael James; Lieutenant Unknown Nebecker; Sergeants Unknown VanAcker, John Doe Sgt. #1, and John Doe Sgt. #2; Grievance Coordinator Q. Bolton; Assistant Resident Unit Supervisor Unknown Pressler; Corrections Officer John Doe C/O #1; Registered Nurses Unknown Supervisor #1, Unknown Supervisor #2, Jennifer Unknown, Sallie

Unknown, Ashley Unknown, Diane Unknown, Jane Doe Nurse #1, and Jane/John Doe Nurse #3; Pharmacy Worker Jane/John Doe #1; Doctor Derek J. Falk; and Health Unit Manager Charles Scott. (First Am. Compl., ECF No. 4, PageID.14–18.)

Plaintiff sues each Defendant in that Defendant's official and personal capacity. (*Id.*)

In Plaintiff's first amended complaint, he fills the gaps between his arrival on August 30 and the receipt of his property on September 11, 2024. Plaintiff reports that on September 1, during morning med-line, he told Defendant Nurse Jenn that his asthma was flaring up due to the mace that remained in his hair from AMF. (*Id.*, PageID.20.) Nurse Jenn told Plaintiff that he would have to wait until he received his property and that there was nothing she could do because it was the weekend. (*Id.*) Plaintiff had an asthma attack that night; he used a brown paper bag to help him breathe. (*Id.*)

The following Monday, Plaintiff asked a corrections officer whether his property had arrived. (*Id.*, PageID.21.) It had not. (*Id.*) Plaintiff informed Nurse Jenn. (*Id.*) Plaintiff was told to wait for his property, but that if he had a bad asthma attack, to contact medical. (*Id.*) The next day, September 4, Plaintiff filled out a healthcare request form regarding his asthma and placed it "in [his] bars." (*Id.*) The next day it was gone, so he assumed it was picked up by medical staff. (*Id.*)

As reported in Plaintiff's affidavit, on September 11, Plaintiff received his property and discovered there was no inhaler. (*Id.*, PageID.22.) He complained to Defendant Jane Doe Nurse #1. (*Id.*) She told Plaintiff to "kite the doctor." (*Id.*) Plaintiff prepared a kite for the doctor and gave it to a corrections officer. (*Id.*)

On September 15, as noted in Plaintiff's initial affidavit, he submitted another healthcare kite requesting an inhaler. (*Id.*, PageID.22–23.) On September 19, during morning med-line, he complained to Defendant Jane Doe Nurse #2 about his nighttime asthma attacks. (*Id.*, PageID.23.)

6

He informed her that he had sent numerous kites regarding an inhaler. (*Id.*) After med-line, he gave a corrections officer another kite for the doctor. (*Id.*)

As explained in Plaintiff's initiating affidavit, a nurse—Defendant Ashley—brought Plaintiff's inhaler to evening med-line. (*Id.*) But she did not give Plaintiff the inhaler. (*Id.*) She told him that he had to turn in his old inhaler to receive the new one. (*Id.*) Plaintiff explained why that was not possible and asked if the healthcare staff could bring the inhaler at med-line. (*Id.*) Defendant Ashley advised Plaintiff that she "would ask the R.N. . . . and let [Plaintiff] know at night med-line." (*Id.*, PageID.24.) At night med-line, Defendant Ashley let Plaintiff know that "the R.N.," who Plaintiff names as Defendant Unknown Supervisor #1, told Ashley that Plaintiff had to turn in an inhaler to receive one. (*Id.*)

On September 20, Defendant Nurse Diane brought an inhaler to evening med-line. (*Id.*) Plaintiff was permitted to use it. (*Id.*) He returned it to the nurse. (*Id.*) Plaintiff slept through that entire night. (*Id.*)

On September 21, at evening med-line, Plaintiff asked either Defendant Nurse Jenn or Defendant Nurse Diane if he could use the inhaler again. (*Id.*) The nurse explained that the pharmacy had "confiscated it." (*Id.*, PageID.25.) Plaintiff asked why. The nurse simply "shrugged her shoulders." (*Id.*)

On September 25, Plaintiff completed a Step 1 grievance form regarding the matter and turned it in to non-party Resident Unit Manager Olivier. (*Id.*) The next day Plaintiff went to healthcare for a meeting with the dietician. (*Id.*) While he was out of his cell, his cell was "shook down." (*Id.*) Upon Plaintiff's return, he was strip searched by Defendants John Doe Sgt. #1 and John Doe Sgt. #2. (*Id.*, PageID.26.) Thereafter, he was moved to the showers, and his cell "was destroyed" by the sergeants and Defendant Assistant Resident Unit Supervisor Pressler. (*Id.*)

On September 27, at around 11:00 p.m., Plaintiff sought the assistance of his "neighbor," Jerome Hairston, because Plaintiff was having an asthma attack and was not able to catch the attention of Defendant John Doe C/O #1. (*Id.*) The combined efforts of Hairston and Plaintiff were not successful either (*Id.*) Eventually, Defendant John Doe C/O #1 "grew tired of Plaintiff and Ha[ir]ston and angrily yelled, 'inmates that assault staff don't get health care.'" (*Id.*)

Plaintiff continued to experience asthma attacks during that night. (*Id.*, PageID.27.) During the early morning hours of September 28, Defendant Lieutenant Nebecker made her rounds. (*Id.*) She opened Plaintiff's cell door because he had covered the bars with a blanket. (*Id.*) Using the blanket as a cover in that way is a violation of MDOC rules; Plaintiff explained that he did it "because he needed medical attention and was being ignored by [Defendant John Doe C/O #1]." (*Id.*) Defendant Nebecker agreed to "call medical." (*Id.*) Nonetheless, Plaintiff continued to suffer his asthma symptoms and no one came. (*Id.*) Plaintiff identifies the person who did not come as Defendant John/Jane Doe #3. (*Id.*)

On September 29, Plaintiff received a misconduct ticket for misuse of property, specifically for having a blanket on his bars. (*Id.*, PageID.28.) The ticket was written by Defendant Sergeant VanAcker. (*Id.*)

Plaintiff notes that on September 30, "healthcare" received Plaintiff's Step 1 grievance.[4] (*Id.*)

---

[4] Later in the complaint, however, Plaintiff notes that Defendant Grievance Coordinator Q. Bolton received Plaintiff's grievance on September 30. (First Am. Compl., ECF No. 4, PageID.31.) Defendant Bolton did not respond until October 22, when he rejected the grievance. (*Id.*) Plaintiff also alleges that he has a separate pending case against Defendant Bolton for violation of Plaintiff's First Amendment rights. (*Id.*) Plaintiff also notes that Defendant Assistant Deputy Warden James is Defendant Bolton's supervisor. (*Id.*)

On October 3, Plaintiff kited Defendant Warden Schroeder complaining about not receiving treatment for his asthma and not receiving a receipt, response, or acknowledgement from Defendant Grievance Coordinator Q. Bolton. (*Id.*) Plaintiff also sent Defendant Schroeder another Step 1 grievance. (*Id.*) Plaintiff notes that he gave those mail communications to non-party Resident Unit Manager Olivier. (*Id.*) On that date, Plaintiff also mailed his affidavit to this Court seeking preliminary injunctive relief. (*Id.*)

On October 15, during evening med-line, Plaintiff asked Defendant Nurse Sallie if he could get a breathing treatment because he was having frequent nighttime asthma attacks and the corrections officers would not call medical. (*Id.*, PageID.29.) Nurse Sallie agreed to ask the R.N. (*Id.*) Plaintiff did not receive any treatment, so he also names the R.N. that Nurse Sallie purportedly asked as Defendant Unknown Supervisor #2 (*Id.*)

On October 23, Plaintiff was examined with regard to his asthma condition. (*Id.*, PageID.30.) Defendant Nurse Christy asked Plaintiff whether he had any inhalers. (*Id.*) Plaintiff explained the trouble he had experienced obtaining treatment for his asthma attacks. (*Id.*) Nurse Christy said she would schedule a meeting with Defendant Dr. Falk and "they would be forced to give Plaintiff inhalers." (*Id.*) On October 25, a man stepped into Plaintiff's cell and asked if Plaintiff had any inhalers. (*Id.*) Plaintiff said no. The man stated, "I will order them for you." (*Id.*) On October 26, Plaintiff received his first inhaler. (*Id.*) On November 11, Plaintiff received his second inhaler. (*Id.*)

Finally, Plaintiff alleges that another prisoner spoke with Defendant Sergeant VanAcker. (*Id.*, PageID.32.) Defendant VanAcker wanted to verify with the other prisoner whether the facts that Plaintiff had purportedly told Defendant VanAcker about the August 30 incident at Baraga were true. (*Id.*) The other prisoner told Plaintiff that Defendant VanAcker explained that "Baraga

9

wanted some retaliation." (*Id*.) Plaintiff notes that as of November 24, Defendant VanAcker has written two ticket against Plaintiff. (*Id*.)

Plaintiff seeks compensatory damages. (*Id*., PageID.33.)

## II.    Plaintiff's Motions to Amend (ECF Nos. 4 and 13)

Plaintiff filed his first amended complaint without leave of Court. The Federal Rules of Civil Procedure permit a litigant one amendment as of right. Fed. R. Civ. P. 15(a). Here, however, Plaintiff did not simply amend his complaint; he added events that occurred subsequent to the filing of the initial complaint. Under Federal Rule of Civil Procedure 15(d), a subsequent "pleading setting out any transaction, occurrence, or event that happened after the date of the [initial] pleading" is a supplement. Fed. R. Civ. P. 15(d). Such a "supplement" requires leave of court. *Id*.

Plaintiff did not seek leave to file his supplemental complaint. Therefore, the Court will construe the supplemental complaint, (ECF No. 4), as a motion for leave. The standard for granting leave to supplement under Rule 15(d) is identical to the standard governing leave to amend under Rule 15(a)(2). *See Spies v. Voinovich,* 48 F. App'x 520, 527 (6th Cir. 2002). In other words, leave to supplement "should [be] freely given[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court identified some circumstances in which "justice" might counsel against granting leave: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id*. at 182. If a claim would be properly dismissed, amendment to add the claim would be futile. *Thiokol Corp. v. Michigan Dep't of Treasury*, 987 F.2d 376, 383 (6th Cir. 1993).

The Court concludes that justice warrants permitting Plaintiff to file his first amended complaint. Because the first amended complaint has already been filed, no further action is necessary.

Additionally, Plaintiff has filed a second motion to amend his complaint. (ECF No. 13.) Plaintiff does not attach a proposed second amended complaint to the motion. Instead, he simply lists things he would like to change in his first amended complaint. First, in ¶¶ 1–4, Plaintiff provides correct names for some of the defendants. The Court will grant Plaintiff leave to so amend his complaint. It is not necessary that Plaintiff file a new amended complaint. Instead, the Court will read Plaintiff's first amended complaint to include the names set forth in his motion, (Mot., ECF No. 13, PageID.88, ¶¶ 1–4). The Clerk of Court is directed to change the following on the Court's docket: (1) the name of Defendant #9 from A.R.U.S. Pressler to A.R.U.S. Kessler; (2) the name of Defendant #12 from Nurse Jenn to Jennifer Racine; (3) the name of Defendant #15 from Nurse Diane to Diane Anderson; and (4) the name of Defendant #17 from Jane Doe #2 to Samantha Karl. Additionally, the Clerk of Court is directed to remove Defendant Jane Doe #1 from the docket because Plaintiff has now identified her as existing Defendant Jennifer Racine.

Plaintiff also proposes amending ¶ 17 of the first amended complaint. (*Id*., PageID.89, ¶ 5.) In the first amended complaint, Plaintiff's allegation in ¶ 17 indicates that his exchange was with one of two nurses, Nurse Diane or Nurse Jenn. Plaintiff asks for leave to change that. He is now certain that it was Nurse Jenn or, as we now know her, Jennifer Racine. The Court will read Plaintiff's first amended complaint to incorporate that change.

Similarly, Plaintiff proposes amending ¶ 35 of the first amended complaint. (*Id*., PageID.92, ¶ 12.) In that paragraph in Plaintiff's first amended complaint, he alleges that an unknown man came into Plaintiff's cell, asked if Plaintiff had inhalers, and, when Plaintiff answered no, advised Plaintiff that the man would order inhalers for Plaintiff. Plaintiff would like to identify that man as Defendant Doctor Falk. The Court will read Plaintiff's first amended complaint to incorporate that change.

11

Plaintiff also indicates that he would like to add a retaliation claim against Dr. Falk. (*Id.*, PageID.91–92, ¶ 11.) The facts Plaintiff has alleged with regard to Dr. Falk, however, do not suffice to state such a claim. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff alleges that he voiced many complaints regarding the treatment that Defendants provided for Plaintiff's asthma. Moreover, on September 30, 2024, Plaintiff filed an administrative grievance. That grievance was ultimately rejected as untimely on October 22, 2024.

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First

12

Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741). The Court concludes that Plaintiff's complaints, oral and written, regarding his asthma treatment were not substantively frivolous. Accordingly, the Court concludes that Plaintiff has adequately alleged protected conduct.

Plaintiff's claim fails, however, at the second step. He has not alleged that Dr. Falk took any adverse action against him. Based on Plaintiff's complaint, the only thing we know about Defendant Falk is (i) that he showed up in Plaintiff's cell on October 25, 2024, (ii) that told Plaintiff that he would order inhalers for Plaintiff, and (iii) that he then ordered those inhalers. There are no other facts alleged regarding Defendant Falk. The Court concludes that Plaintiff's allegations do not support an inference that Defendant Falk took adverse action against Plaintiff. Moreover, Plaintiff's factual allegations indicate that Defendant Falk did not take the non-adverse actions he took "in retaliation" for Plaintiff's complaint. To the contrary, it was Plaintiff's complaints to Nurse Christy that resulted in Defendant Falk providing Plaintiff the treatment he sought.

For all of these reasons, the Court concludes that Plaintiff's proposed addition of a retaliation claim against Defendant Falk, based on the facts he has alleged in his first amended complaint, would be futile and the Court will not permit that amendment.

Plaintiff also seeks to supplement his complaint with new allegations of events that occurred after he filed his first amended complaint. (*Id.*, PageID.88–91, ¶¶ 6–10.) The allegations set forth in those paragraphs of Plaintiff's motion, however, are already before the Court in *Delaney v. Schroeder*, No. 2:25-cv-45 (W.D. Mich.) (Compl., ECF No. 1). Because the proposed

13

new allegations repeat the factual allegations and claims that Plaintiff is already pursuing in this Court, it would be futile to add them to this case.

Plaintiffs generally have "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendants." *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977). Accordingly, as part of its inherent power to administer its docket, a district court may dismiss a suit that is duplicative of another federal court suit. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *Adams v. California Dep't of Health Serv.*, 487 F.3d 684, 688 (9th Cir. 2007); *Missouri v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 953–54 (8th Cir. 2001); *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138–39 (2d Cir. 2000); *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997). The power to dismiss a duplicative lawsuit is meant to foster judicial economy and the "comprehensive disposition of litigation," *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952), and to protect parties from "the vexation of concurrent litigation over the same subject matter." *Adam v. Jacobs*, 950 F.2d 89, 93 (2d Cir. 1991). Because adding the supplemental allegations to the first amended complaint would create duplicative litigation, the interests of justice do not favor permitting Plaintiff to add those allegations.

Finally, Plaintiff offers a page and a half of quotes from MDOC Policy Directive 03.04.100 (eff. Mar. 10, 2025) regarding health services. The present version of that directive is only a few weeks old. It is not apparent why Plaintiff wishes to include the language in his complaint. Nonetheless, "[c]onclusory assertions that merely parrot the language of a statute do not state a plausible claim." *Republican Nat'l Comm. v. Benson*, __ F. Supp. 3d __, 2024 WL 4539309, at 3 (W.D. Mich. Oct. 22, 2024). To state any claim that Defendants violated those policy directives, "Plaintiff[] would need to allege some factual context to nudge [any policy] violation claim across

14

the line from conceivable to plausible. *Id.* (internal quotation marks and citations omitted). As Plaintiff offers no facts in connection with his quotations of MDOC policy, justice does not favor permitting Plaintiff to add those allegations.

Accordingly, Plaintiff's first-filed motion to amend (ECF No. 4) will be granted. Because the first amended complaint has already been filed, no further action is necessary. Further, Plaintiff's second motion to amend (ECF No. 13) will be granted in part and denied in part, as set forth above.

## III.    Misjoinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied); *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018) ("Unrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). A district judge necessarily has considerable discretion in applying Rules 18 and 20. The rules 'operate[ ] independently' because Rule 20 contains limitations that Rule 18 does not, and the Rule 20 inquiry comes first.").

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (citation omitted).

Permitting improper joinder in a prisoner civil rights action undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

16

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .

> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his claims be dismissed as frivolous or for failure to state a claim. Courts are therefore obligated to reject misjoined claims like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, Defendant Nurse Jennifer Racine is the first party mentioned in Plaintiff's factual allegations. (*See* First Am. Compl., ECF No. 4, PageID.20.)[5] Plaintiff alleges that he told Defendant Racine about his need for asthma treatment. (*Id.*) She told Plaintiff that she could not do anything because it was the weekend and that he would have to wait until he received his property. (*Id.*)

---

[5] The analysis of joinder must start somewhere. By accepting the first-mentioned Defendant and the factual allegations against the first-mentioned Defendant as the foundation for the joinder analysis, the Court is considering the issue of joinder of parties as Plaintiff has presented it in his complaint.

Considering first whether other Defendants are properly joined under Rule 20, the Court must determine whether one claim against each additional defendant is transactionally related to the claim against Defendant Racine and involves a common question of law or fact. The Court concludes that Plaintiff's claims relating to denying Plaintiff treatment for asthma generally involve a common question of law or fact. Reading Plaintiff's allegations indulgently, the Court concludes that Plaintiff intended to raise claims transactionally relating to the denial of treatment for asthma against the following Defendants, herein **"the Failure to Treat Defendants"**: Jennifer Racine, Jane Doe Nurse #1, Samantha Karl, Nurse Ashley, Unknown Supervisor #1, Diane Anderson, John Doe #1, Lieutenant Nebecker, Jane/John Doe Nurse #3, Warden Schroeder, Grievance Coordinator Q. Bolton, Nurse Sallie, Unknown Supervisor #2, Doctor Falk, Jane/John Doe pharmacy #1, Health Unit Manager Charles Scott, and Assistant Deputy Warden James.

Turning to Rule 18, Plaintiff could join to his asthma claims against the Failure to Treat Defendants any other claims against those Defendants. Fed. R. Civ. P. 18(a) ("A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."). The Court concludes that all of the claims raised against the Failure to Treat Defendants relate to the failure to treat asthma. Thus, there are no additional claims to join under Rule 18.

Plaintiff's allegations against the Failure to Treat Defendants are transactionally *unrelated* to Plaintiff's allegations against Defendants Sergeant VanAcker, John Doe Sgt. #1, John Doe Sgt. #2, and Assistant Resident Unit Supervisor Kessler. There are no questions of law and fact that are common between Plaintiff's claims against the Failure to Treat Defendants on the one hand, and Plaintiff's claims against Defendants Sergeant VanAcker, John Doe Sgt. #1, John Doe Sgt. #2, and Assistant Resident Unit Supervisor Kessler, on the other hand. For any of those additional

defendants to be joined, Plaintiff's claims against that defendant must have a question of law or fact in common with the questions of law or fact that are at issue in Plaintiff's claims relating to the failure to treat his asthma. There is no such commonality apparent in Plaintiff's complaint.

Accordingly, Plaintiff's claims against the Failure to Treat Defendants are transactionally related and involve common questions of law and fact. However, Plaintiff's claims against Defendants Sergeant VanAcker, John Doe Sgt. #1, John Doe Sgt. #2, and Assistant Resident Unit Supervisor Kessler involve issues that are transactionally unrelated to, and do not share common questions of law or fact with, the claims relating to the failure to treat Plaintiff's asthma.

It appears that Plaintiff believes that all of the events set forth in the complaint are related simply because they occurred during his incarceration at MBP. However, such belief does not show that the claims arise out of the same transaction or occurrence. Accordingly, the Court concludes that Plaintiff's claims against the Failure to Treat Defendants are properly joined, but that Plaintiff has improperly joined Defendants Sergeant VanAcker, John Doe Sgt. #1, John Doe Sgt. #2, and Assistant Resident Unit Supervisor Kessler.

Because the Court has concluded that Plaintiff has improperly joined Defendants Sergeant VanAcker, John Doe Sgt. #1, John Doe Sgt. #2, and Assistant Resident Unit Supervisor Kessler to this action, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (citation omitted)); *DirecTV, Inc. v. Leto*, 467

F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

Plaintiff brings this action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). Plaintiff's allegations against these Defendants relate to events on or after August 30, 2024. Plaintiff's complaint provides no indication that the statute of limitations has or will run on Plaintiff's claims against the misjoined Defendants. Therefore, Plaintiff has provided no basis for this Court to conclude that he would suffer gratuitous harm if his claims against the misjoined Defendants are dismissed without prejudice.

20

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Sergeant VanAcker, John Doe Sgt. #1, John Doe Sgt. #2, and Assistant Resident Unit Supervisor Kessler because they are misjoined. The Court will dismiss Plaintiff's claims against Defendants Sergeant VanAcker, John Doe Sgt. #1, John Doe Sgt. #2, and Assistant Resident Unit Supervisor Kessler without prejudice to the institution of a new, separate lawsuit or lawsuits.[6]

## IV.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

---

[6] If Plaintiff wishes to proceed with his claims against one or more of the misjoined Defendants, he may do so by filing new civil action(s) on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fees or applying in the manner required by law to proceed *in forma pauperis*. As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined. Plaintiff is advised that simply because separate and discrete events occurred during Plaintiff's incarceration at a particular correctional facility does mean that all claims arising out of these events are properly joined.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

Plaintiff sues each Defendant in that Defendant's official and personal capacity. (First Am. Compl., ECF No. 4, PageID.14–18.) A suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity, in this case, per Plaintiff's allegations, the MDOC.[7] *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

---

[7] The Court construes Plaintiff's amended complaint as identifying the MDOC as the employer of each individual defendant. It is certainly possible—although not alleged by Plaintiff—that one or more of the Defendants works for a private company that contracts with the MDOC to provide medical services. If Plaintiff had sued private company employees in their official capacity, the analysis would change, but the result would not.

With respect to any Defendants employed by a private entity that contracts with the state to provide healthcare to inmates, Plaintiff's official capacity claims are equivalent to a suit against the private entity. A private entity that contracts with a governmental entity to perform a traditional governmental function like providing healthcare to inmates can "be sued under § 1983 as one

Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Thus, Plaintiff could not pursue a damages claim against the State of Michigan or the MDOC under § 1983, and he cannot pursue such a claim against Defendants in their official capacities. Accordingly, Plaintiff's official capacity claims against the Failure to Treat Defendants for damages under § 1983 are properly dismissed because relief cannot be granted on such a claim.

An official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the

---

acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993). The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. See *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), has been extended to private corporations).

"Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020). Instead, a municipality "can be sued under § 1983 only when a policy or custom of that government caused the injury in question." *Id*. (citations omitted). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005). Here, Plaintiff fails to allege the existence of a custom or policy of the private entity, let alone that any policy or custom was the moving force behind his alleged constitutional injury. Where a plaintiff fails to allege that a policy or custom existed, dismissal of the action for failure to state a claim would be appropriate. *Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987).

Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex parte Young* for injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, in itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief).

Here, Plaintiff alleges harm for constitutional violations that have already occurred. He does not seek declaratory or injunctive relief, prospective or otherwise. He seeks damages. As the Sixth Circuit recently explained in *Cooperrider v. Woods*, 127 F.4th 1019 (6th Cir. 2025):

> But the *Ex parte Young* exception applies only when a plaintiff seeks and clearly alleges 'prospective' equitable relief to stop 'a continuing violation of federal law.'" *Josephson [v. Ganzel]*, 115 F.4th [771,] 782 [(6th Cir. 2024)] (quoting *Morgan v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 63 F.4th 510, 515 (6th Cir. 2023)). As a result, we "need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)).

*Cooperrider*, 127 F. 4th at 1043–44 (parallel citations omitted). Thus, the *Ex parte Young* exception is inapplicable to Plaintiff's claims against the Failure to Treat Defendants, and he has failed to state a claim against them, for damages or otherwise, in their respective official capacities.

### B.    Supervisory Liability

When listing each Defendant, Plaintiff adds a note regarding the nature of the claim or claims he is raising against that Defendant. (First Am. Compl., ECF No. 4, PageID.14–18.) With regard to Defendants Warden Schroeder, Assistant Deputy Warden James, Doctor Falk, and Health Unit Manager Scott, Plaintiff notes that the Defendants are liable for "failure to supervise." (*Id.*)

"[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. And, a claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Further, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance or other document sent to them. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Here, to the extent that Plaintiff seeks to impose liability based only on a failure to supervise, Plaintiff fails to allege any facts to show that Defendants Schroeder, James, Falk, or Scott engaged in any active unconstitutional conduct.

Moreover, to the extent that Plaintiff seeks to hold these Defendants liable due to their supervisory positions, government officials, such as Defendants, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). The acts of one's subordinates are not enough, nor can

supervisory liability be based upon the mere failure to act. *See Grinter*, 532 F.3d at 575–76; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, the factual allegations in the complaint, which are recounted above, are insufficient to show that Defendants Schroeder, James, Falk, or Scott encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. And, any conclusory allegations of supervisory responsibility are insufficient to show that these Defendants were personally involved in the alleged violations of Plaintiff's constitutional rights. *See, e.g.*, *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers*, 368 F.3d at 888.

Therefore, for these reasons, Plaintiff fails to state any claim upon which relief may be granted against Defendants Schroeder, James, Falk, or Scott for a failure to supervise their subordinates.[8]

---

[8] With regard to Defendants Falk and Scott, Plaintiff also alleges that the Defendants are liable for deliberate indifference independently of their failure to supervise others. (First Am. Compl., ECF No. 2, PageID.17–18.) The Court will address those claims when evaluating Plaintiff's Eighth Amendment "failure to treat asthma" claims.

C.    **Eighth Amendment Deliberate Indifference to a Serious Medical Need**

An Eighth Amendment claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. Deliberate indifference requires that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Against that backdrop, the Court will consider Plaintiff's claims against each Defendant.

1.    **Objective Component**

The Sixth Circuit Court of Appeals has concluded that "the symptoms associated with an asthma attack—wheezing, difficulty breathing, tightness in the chest—are quite obvious and recognizable even to a lay person." *Harrison v. Ash*, 539 F.3d 510, 518–19 (6th Cir. 2008). Plaintiff reports suffering several asthma attacks during the first few weeks he was housed at MBP.

27

Although asthma symptoms may be serious, a diagnosis of asthma, standing alone, does not necessarily constitute a serious medical condition. *See Dillard v. Henderson*, No. 4:20-cv-P185, 2021 WL 3134252, at *2 (W.D. Ky. July 23, 2021) ("Courts generally agree that the diagnosis of asthma alone is not enough to establish a sufficiently serious medical need under the Eighth Amendment."); *McMurry v. Caruso*, No. 1:07-cv-905, 2009 WL 198519, at *7 (W.D. Mich. Jan. 27, 2009) (finding that the plaintiff's mere diagnosis of asthma was insufficient to establish the objective component of the plaintiff's deliberate indifference claim). Instead, courts distinguish the mere "existence of the condition . . . from the situation in which an inmate is suffering an actual attack." *Patterson v. Lilley*, No. 02 Civ.6056, 2003 WL 21507345, at *4 (S.D.N.Y. June 30, 2003); *see Board v. Farnham*, 394 F.3d 469, 484 (7th Cir. 2005) ("We have previously held that asthma can be, and frequently is, a serious medical condition, depending on the severity of the attacks." (citing *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001))); *Crosby v. Perry*, No. 4:09-cv-139, 2010 WL 2464887, at *6 (M.D. Ga. June 14, 2010) (noting that "courts must look to the seriousness of the condition at the time of the events alleged in the complaint" (citing, among others, *Williams v. Rodriguez*, 509 F.3d 392, 401–02 (7th Cir. 2007))). As one court, has observed, "[i]t is common knowledge that some asthma 'attacks' are mild and brief in duration, while others are severe, prolonged, and even life threatening. Courts recognize this distinction and refuse to fashion a rule that every instance of failure to treat a prisoner's asthma rises to the level of a constitutional claim." *Thomas v. Mikell*, No. 608-012, 2008 WL 2156362, at *2 (S.D. Ga. May 22, 2008) (footnote omitted). The *Thomas* court also noted that in considering whether a plaintiff's asthma symptoms constituted an objectively serious condition, most courts "have required a showing that the asthma attack was severe or that it led to physical harm." *Id.* (collecting cases).

28

Thus, courts consider mild asthma symptoms, or asthma that can be controlled with inhalers or other medications, a non-serious condition for purposes of the Eighth Amendment. *See Wright v. J & S Extradition Servs*., No. 3:11-0464, 2012 WL 1681812, at *6 (M.D. Tenn. May 11, 2012) ("Asthma that '[can] be managed with "with the use of inhalers and other medication . . .,' " is not a serious health condition for the purposes of the Eighth Amendment." (quoting *Jones v. Caruso*, 421 F. App'x 550, 552 (6th Cir. 2011))); *Stoneman v. Thompson*, No. 3:03CV716, 2005 WL 3881432, at *4 (E.D. Va. Apr. 19, 2005) (finding the plaintiff's asthma not serious where the record indicated that it "was well-controlled without the need for more rigorous monitoring"). This Court has concluded that asthma symptoms that can be resolved "by doing some slow breathing"— as Plaintiff did with the paper bag—are not sufficiently serious. *Reeves v. Jaramillo*, No. 4:04-cv-125, 2005 WL 2177238, at *4 (W.D. Mich. Sept. 8, 2005) (citing *Bates v. Sullivan*, 6 F. App'x 425, 428 (7th Cir. 2001) and *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

Considering Plaintiff's allegations, it is certainly possible that his asthma attacks, which were overcome by breathing into a paper bag, might not be severe. It is also possible that Plaintiff was receiving some treatment other than his inhaler(s) for the asthma and that he has not included that information in his allegations. Nonetheless, at this stage of the proceedings, under *Harrison*, Plaintiff's allegations regarding his symptoms support an inference that his asthma attacks constituted a serious medical need.

### 2.    Subjective Component

#### a.    Nurse Jennifer Racine

Plaintiff encountered Defendant Racine on the day after he arrived at MBP. Plaintiff advised Defendant Racine that he suffered "bad asthma attacks in the middle of the night." (Am. Compl., ECF No. 4, PageID.20.) Defendant Racine advised Plaintiff that, because it was Sunday,

there was nothing she could do. (*Id.*) She also told Plaintiff that he would have to wait until he received his property to obtain an inhaler. (*Id.*)

Plaintiff experienced an asthma attack that night. He got through it by breathing into a brown paper bag. (*Id.*) Two days later,[9] Plaintiff checked with a corrections officer to see if his property had arrived. (*Id.*, PageID.20–21.) It had not, so he again spoke with Defendant Racine about the nighttime asthma attacks. (*Id.*, PageID.21) Plaintiff indicates that he was told—but he does not say who told him—that he had to wait for his property to arrive but if it got too bad, to contact medical. (*Id.*)

Plaintiff saw Defendant Racine again on September 21, 2024, during evening med-line. Plaintiff had anticipated that he would be able to access an inhaler, even though he could not keep it, because Nurse Diane Anderson had permitted such use the previous day. (*Id.*, PageID.24.) Defendant Racine advised Plaintiff that "pharmacy confiscated [the inhaler]." (*Id.*, PageID.25.) When Plaintiff asked why, Defendant Racine shrugged her shoulders. (*Id.*)

Plaintiff identifies Defendant Racine as a nurse. (*Id.*, PageID.16.) He does not allege that she is "an advanced practice registered nurse" or a "registered professional nurse who holds a specialty certification;" thus, in Michigan, she could not prescribe medications for Plaintiff. Mich. Comp. Laws § 333.17708. Plaintiff did not see Defendant Racine for examination. He saw her at med-line to receive his diabetes medication. When Plaintiff asked about treatment for his asthma, Defendant Racine informed him of the healthcare rule that a new "keep on person" inhaler could not be distributed to Plaintiff until he turned in his old one. Plaintiff does not suggest that Nurse Racine had the authority to ignore the rule. Indeed, Plaintiff alleges that all of the nurses he asked

---

[9] Plaintiff describes this day in two ways: first he states that it was a Monday and then he states it was September 3rd. September 3, 2024, was a Tuesday.

about the issue indicated that they would have to seek permission from a superior to pursue any course of action other than enforcing the rule. Nurse Racine advised Plaintiff that if he experienced a severe attack to contact medical.

Defendant Racine was aware of a risk of harm to Plaintiff. However, Plaintiff has failed to allege *facts* that support an inference that she disregarded that risk of harm. Plaintiff's allegations suggest she took actions to respond to Plaintiff's complaint. Accordingly, Plaintiff has failed to state a deliberate indifference claim against her.

### b.    Nurse Diane Anderson (Jane Doe Nurse #1)

Plaintiff first encountered Defendant Anderson on September 11, 2024, after he learned his property did not include an inhaler. (Am. Compl., ECF No. 4, PageID.22.) He so advised Defendant Anderson. (*Id*.) She told him to kite the doctor. (*Id*.) On September 20, 2024, Defendant Anderson brought an inhaler to evening med-line and permitted Plaintiff to take two or three "puffs" from the inhaler. (*Id*., PageID.24.)

Defendant Anderson was aware of a risk of harm to Plaintiff. However, Plaintiff has failed to allege facts that support an inference that she disregarded that risk of harm. Plaintiff's allegations suggest she took actions to respond to Plaintiff's complaint. Accordingly, Plaintiff has failed to state a deliberate indifference claim against her.

### c.    Nurse Samantha Karl (Jane Doe Nurse #2)

On September 19, 2024, Plaintiff complained to Defendant Karl at morning med-line that he continued to suffer nighttime asthma attacks. (*Id*., PageID.23.) He also told her he had sent numerous kites to healthcare regarding his need for an inhaler. (*Id*.) Plaintiff alleges no facts about what Defendant Karl did or did not do in response to Plaintiff's complaints.

Defendant Karl was aware of a risk of harm to Plaintiff. However, Plaintiff has failed to allege *facts* that support an inference that she disregarded that risk of harm. Accordingly, Plaintiff has failed to state a deliberate indifference claim against her.

### d.    Nurse Ashley Unknown

On September 19, 2024, at evening med-line, Defendant Ashley brought Plaintiff an inhaler, but stated she "could not give the Plaintiff the inhaler UNLESS he had one to turn in in exchange." (*Id*., PageID.23.) Plaintiff explained that he did not have an inhaler to turn in. (*Id*.) He asked if the nurses could just bring an inhaler to med-line so that he could use it and immediately return it. (*Id*., PageID.23–24.) Defendant Ashley agreed to ask her supervisor and to let Plaintiff know the response at night med-line. (*Id*., PageID.24.) At night med-line, Defendant Ashley advised Plaintiff that she was told he had to turn in an inhaler to receive one. (*Id*.)

Defendant Ashley was aware of a risk of harm to Plaintiff. However, Plaintiff has failed to allege *facts* that support an inference that she disregarded that risk of harm. Plaintiff's allegations suggest she took actions to respond to Plaintiff's complaint. Accordingly, Plaintiff has failed to state a deliberate indifference claim against her.

### e.    Unknown Nurse Supervisor #1

On September 19, 2024, Defendant Supervisor #1 told Defendant Ashley that Ashley could not give Plaintiff his inhaler unless he turned one in. (*Id*.)

Defendant Supervisor #1 was presumably advised by Defendant Ashley of Plaintiff's circumstances and, thus, was aware of a risk of harm to Plaintiff. Moreover, Plaintiff's allegations support an inference that Defendant Supervisor #1 could have authorized dispensing the inhaler to Plaintiff to use at med-line. If that is the case, Defendant Supervisor #1 may have consciously disregarded that risk of harm. It is also possible that Defendant Supervisor #1 did not have the authority to permit dispensing the inhaler at med-line because of the exchange policy. That is a

factual matter for another time. Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Supervisor #1 cannot be dismissed at this preliminary stage of the proceedings.

### f.    Corrections Officer John Doe #1

On September 27, 2024, Plaintiff and his neighbor, Jerome Hariston, called Defendant John Doe #1 for assistance because Plaintiff was experiencing a severe asthma attack. (*Id*., PageID.26.) Defendant John Doe #1 ignored their requests for assistance, angrily responding "inmates that assault staff don't get health care." (*Id*.)

Defendant John Doe #1 was aware of a risk of harm to Plaintiff. Moreover, Plaintiff has alleged facts that support an inference that Defendant John Doe #1 consciously disregarded that risk of harm. Accordingly, Plaintiff's Eighth Amendment deliberate indifference claim against Defendant John Doe #1 cannot be dismissed at this preliminary stage of the proceedings.

### g.    Lieutenant Unknown Nebecker

During the early morning of September 28, 2024, Defendant Nebecker, during rounds, advised Plaintiff to remove the blanket he had hung that obscured the view into Plaintiff's cell. (*Id*., PageID.27.) Plaintiff explained he had placed the blanket to draw attention to his plight. (*Id*.) He explained further that he had suffered a severe asthma attack "all night" and continued to have difficulty breathing. (*Id*.) Defendant Nebecker advised Plaintiff that she would call medical. (*Id*.)

Defendant Nebecker was aware of a risk of harm to Plaintiff. However, Plaintiff has failed to allege facts that support an inference that she disregarded that risk of harm. Instead, she advised Plaintiff she would call medical. Accordingly, Plaintiff has failed to state a deliberate indifference claim against her.

### h.    Healthcare Worker John/Jane Doe #3

Defendant John/Jane Doe #3 is the healthcare worker who "never came" to assist Plaintiff after Defendant Nebecker called medical. (*Id*.) It is entirely conceivable that someone—John/Jane

Doe #3—received Defendant Nebecker's call, fully understood the risk that Plaintiff faced, knew that Plaintiff would suffer needlessly from his asthma attack if they did not respond, and deliberately chose to not respond. It is also conceivable that Nebecker failed to adequately convey Plaintiff's distress, that John/Jane Doe #3 did not understand the risk that Plaintiff faced absent intervention, or that John/Jane Doe #3 was negligent in failing to respond.

Plaintiff alleges no facts that would support any inference regarding the subjective prong with regard to Defendant John/Jane Doe #3. Absent such factual allegations, Plaintiff has failed to "nudge[] the claim[] across the line from conceivable to plausible[; therefore,] the [] complaint must be dismissed." *Sturgill v. Am. Red Cross*, 114 F.4th 803, 807 (6th Cir. 2024) (quoting *Twombly*, 550 U.S. at 570).

### i.    Nurse Sallie Unknown

On October 15, 2024, during evening med-line, Plaintiff asked Defendant Sallie if he could get a breathing treatment because he continued to experience asthma attacks at night and he could not get the unit staff to call healthcare. (*Id*., PageID.29.) Defendant Sallie asked how long Plaintiff had experienced the problem. (*Id*.) Plaintiff advised her that it was a problem as long as he had been at MBP. (*Id*.) Defendant Sallie advised Plaintiff she would ask her supervisor. (*Id*.)

Defendant Sallie was aware of a risk of harm to Plaintiff. However, Plaintiff has failed to allege *facts* that support an inference that she disregarded that risk of harm. Plaintiff's allegations suggest she took action to respond to Plaintiff's complaint. Accordingly, Plaintiff has failed to state a deliberate indifference claim against her.

### j.    Defendant Unknown Supervisor #2

Plaintiff contends that the supervisor that Defendant Sallie consulted regarding Plaintiff— Unknown Supervisor #2—was deliberately indifferent to Plaintiff's serious medical need. (*Id*.,

PageID.16, 29.) Plaintiff does not allege what Defendant Unknown Supervisor #2 did or failed to do.[10]

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff does nothing more than provide the pseudonym, Unknown Supervisor #2,

---

[10] Plaintiff notes that he was seen in healthcare for his asthma condition on October 23, 2024. (Am. Compl., ECF No. 4, PageID.29.) It is possible that this appointment was the product of Defendant Sallie's contact with Unknown Supervisor #2. If that was the case, however, that fact would not support an inference that Unknown Supervisor #2 consciously disregarded the risk of harm to Plaintiff.

in the body of his complaint. His allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Accordingly, Plaintiff's allegations fail to state a claim against Defendant Unknown Supervisor #2.

### k.    Dr. Derek J. Falk

The Court has already addressed Plaintiff's "failure to supervise" claim against Defendant Falk, but Plaintiff raises a deliberate indifference claim against Defendant Falk himself as well. (*Id.*, PageID.17.) Plaintiff was seen in healthcare on October 23, 2024, by non-party Nurse Christy. (Am. Compl., ECF No. 4, PageID.30.) When Nurse Christy learned Plaintiff had been suffering asthma attacks and did not have inhalers, she advised Plaintiff she would schedule a meeting with Defendant Falk to force the issue. (*Id.*) Two days later, Defendant Dr. Falk visited Plaintiff in his cell and told Plaintiff that Falk would order inhalers. (*Id.*) The next day Plaintiff received his first inhaler; on November 11, 2024, Plaintiff received his second inhaler. (*Id.*)

Plaintiff does not allege any *facts* to suggest that Defendant Falk was aware of a risk of harm to Plaintiff before appearing in Plaintiff's cell on October 25. Immediately thereafter, Defendant Falk ordered inhalers for Plaintiff. Plaintiff has failed to allege *facts* that support an inference that Defendant Falk disregarded any risk of harm to Plaintiff. To the contrary, Plaintiff's allegations suggest Defendant Falk promptly took action to respond to Plaintiff's complaint. Accordingly, Plaintiff has failed to state a deliberate indifference claim against him.

### l.    Health Unit Manager Charles Scott

The Court has already addressed Plaintiff's "failure to supervise claim against Defendant Scott; but Plaintiff raises a deliberate indifference claim against Defendant Scott himself as well. (*Id.*, PageID.18.)

36

As discussed above, it is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants, *see Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim), and the Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman*, 529 F.3d at 684 (6th Cir. 2008) (citation omitted).

Here, Plaintiff does nothing more than provide Defendant Scott's name and position in the listing of Defendants. He does not even mention what Defendant Scott did or did not do in the body of his complaint. His allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Accordingly, Plaintiff's allegations fail to state a deliberate indifference claim against Defendant Scott.

### m.      Jane Doe Pharmacy #1

The problem Plaintiff encountered during the first eight weeks of his stay at MBP arose from the requirement that a prisoner return an exhausted inhaler before the pharmacy provides a new inhaler. Every healthcare provider Plaintiff encountered explained that requirement. Plaintiff had no inhaler to return, which left him with no treatment. The med-line nurses tried to work out another means to address the problem to no avail because "pharmacy" confiscated the "compromise inhaler."

Plaintiff did not provide the name of the person at the pharmacy responsible for enforcing the inhaler return requirement or confiscating the inhaler Plaintiff used on one occasion. Instead, Plaintiff offers a pseudonymous defendant—Jane Doe Pharmacy #1—as the party responsible for enforcing the requirement to Plaintiff's detriment.

The Court concludes that Jane Doe Pharmacy #1's insistence on that requirement even when it could not be met and when the patient was suffering symptoms demonstrates awareness of the risk and conscious disregard of the risk. Accordingly, the Court cannot dismiss the Eighth Amendment deliberate indifference claim against Jane Doe Pharmacy #1 at this stage of the proceedings.

### n.    Grievance Coordinator Q. Bolton

Finally, Plaintiff contends that Defendant Bolton was deliberately indifferent to Plaintiff's serious medical needs because on October 22, 2024, Defendant Bolton rejected as untimely Plaintiff's September 30, 2024, grievance[11] regarding Plaintiff's need for an inhaler. As noted above, § 1983 liability may not be imposed on an official simply because he or she denied an administrative grievance or failed to act based upon information contained in a grievance or failed to remedy the unconstitutional behavior of others. *See Shehee*, 199 F.3d at 300. Therefore, Defendant Bolton's rejection of Plaintiff's grievance does not constitute deliberate indifference to Plaintiff's serious medical need or any other constitutional violation. Accordingly, Plaintiff has failed to state an Eighth Amendment deliberate indifference claim against Defendant Bolton.

### <u>Conclusion</u>

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Further, the Court will permit Plaintiff to amend and supplement his initial complaint, (ECF No. 1), with the allegations of the first amended complaint, (ECF No. 4). The Court will grant in part and deny in part Plaintiff's pending motion to amend and supplement his complaint, (ECF No. 13). Specifically, the Court will grant Plaintiff's motion with respect to the allegations in ¶¶ 1–5 and 12 of Plaintiff's

---

[11] Plaintiff filed the grievance as an exhibit several weeks after he filed his first amended complaint. (ECF No. 9-1, PageID.55–58.)

motion and deny the motion—without prejudice to consideration in other pending cases—as futile with regard to all other proposed amendments or supplements.

Having permitted those amendments, the Court will direct the Clerk of Court to change the docket to reflect the following:

1.    The surname of the Defendant initially identified as Unknown Pressler shall be changed to Kessler.

2.    Defendant Unknown Nurse #1 shall be removed from the docket as Plaintiff has identified her as existing Defendant Nurse Diane Unknown.

3.    Defendant Unknown Nurse #2 shall be replaced on the docket with the name Defendant Samantha Karl.

4.    Defendant Nurse Jennifer Unknown shall be changed to Jennifer Racine

5.    Defendant Nurse Diane Unknown shall be changed to Diane Anderson.

Having reviewed Plaintiff's first amended complaint as permitted by Federal Rule of Civil Procedure 21, the Court finds that Defendants VanAcker, John Doe Sgt. #1, John Doe Sgt. #2, and Kessler (initially named as Pressler) are misjoined. The Court will drop the misjoined Defendants as parties and dismiss Plaintiff's claims against them without prejudice.

Additionally, having conducted the review required by the PLRA, the Court determines that Defendants Schroeder, James, Bolton, Unknown Supervisor #2, Racine, Nurse Sallie, Nurse Ashley, Anderson, John/Jane Doe Nurse #3, Falk, and Scott will be dismissed for failure to state a claim on which relief may be granted under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

Plaintiff's claims against Defendants John Doe C/O #1, Unknown Supervisor #1, and Jane/John Doe Pharmacy #1 under the Eighth Amendment for deliberate indifference to Plaintiff's serious medical need remain in the case.

An order consistent with this opinion will be entered.


Dated:    May 27, 2025                              /s/ *Maarten Vermaat*
                                                    Maarten Vermaat
                                                    United States Magistrate Judge