UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

BRASHARD DELANEY #671563,

        Plaintiff,

v.

SARAH SHROEDER, et al.,

        Defendants.

                             /

Case No.   2:24-cv-172

Hon.  Jane M. Beckering
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.  Introduction

This Report and Recommendation (R. & R.) addresses Defendant Nita Roberts's motion to dismiss, ECF No. 38, Plaintiff's response in opposition, ECF No. 41, and Defendant's reply, ECF No. 44.   This R&R also addresses Defendant's motion to strike Plaintiff's sur-reply.   ECF No. 46.

Plaintiff – state prisoner Brashard Delaney – filed an unverified civil complaint under 42 U.S.C. § 1983 alleging that Defendants were deliberately indifferent to his serious medical needs while incarcerated at Marquette Branch Prison (MBP).   ECF No. 4. (Plaintiff's Amended Complaint).   In Plaintiff's Amended Complaint, he names the following Defendants: Warden Sara Schroeder; Assistant Deputy Warden Michael James; Lieutenant Unknown Nebecker; Sergeants Unknown VanAcker, John Doe Sgt. #1, and John Doe Sgt. #2; Grievance Coordinator

1

Q. Bolton; Assistant Resident Unit Supervisor Unknown Pressler; Corrections Officer John Doe C/O #1; Registered Nurses Unknown Supervisor #1, Unknown Supervisor #2, Jennifer Unknown, Sallie Unknown, Ashley Unknown, Diane Unknown, Jane Doe Nurse #1, and Jane/John Doe Nurse #3; Pharmacy Worker Jane/John Doe #1; Doctor Derek J. Falk; and Health Unit Manager Charles Scott.    ECF No. 4, PageID.14–18.    This Court dismissed several Defendants in a screening opinion issued on May 27, 2025.    ECF No. 17.    Following screening, only Plaintiff's Eighth Amendment claim for deliberate indifference to Plaintiff's serious medical need against Defendants John Doe C/O #1, Unknown Supervisor #1, and Jane/John Doe Pharmacy #1 remain in the case.    Jane Doe Pharmacy #1 was identified as Pharmacy Assistant Nita Roberts, who brings the present motion to dismiss.

The Court usually considers exhaustion issues in an R. & R. addressing a motion for summary judgment.    However, as explained below, case law makes clear that the court may, in limited circumstances, address a Plaintiff's failure to exhaust his administrative remedies.    This is one of those circumstances.

Defendant Roberts asserts that Delaney's Complaint fails to state a claim because Delaney must exhaust all administrative remedies before filing a lawsuit. ECF No. 38, PageID.206.    In the opinion of the undersigned, Delaney's Amended Complaint fails to state a claim for which relief may be granted because there was not enough time between the alleged conduct and the filing of this lawsuit for Delaney to exhaust his administrative remedies.    Accordingly, the undersigned respectfully recommends that the Court **grant** Defendant Robert's motion to dismiss.

## II.    Factual Allegations

The Court previously issued a screening opinion in this case.   ECF No. 17.

There, the Court provided the following summary of the relevant factual allegations,

in pertinent part:

> Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility.
>
> On October 11, 2024, the Court received a document from Plaintiff titled "affidavit." (ECF No. 1.) In that document, Plaintiff avers that he suffers from chronic asthma, which he has treated with two different prescription inhalers. (*Id.*, PageID.1.) On August 30, 2024, Plaintiff arrived at MBP.[1] (*Id.*) He was "emergency transferred" there from Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. (*Id.*) Plaintiff was transferred "for staff assault and possession of a weapon." (*Id.*) Plaintiff states that he was found guilty of fashioning a weapon out of his inhaler. (*Id.*)
>
> Plaintiff's property was not transported with him; it arrived on September 11, 2024. (*Id.*) It did not include his inhalers.[2] (*Id.*) On September 15, 2024, Plaintiff requested a new inhaler. (*Id.*, PageID.2.) On September 19, a nurse brought an Albuterol inhaler with her to "med-line." (*Id.*) Plaintiff notes that he participates in med-line three times daily because he receives regular treatments for diabetes. (*Id.*) The nurse advised Plaintiff that she could not give him the inhaler unless he turned in an old one. (*Id.*) Plaintiff explained that he did not have an inhaler to exchange. He asked if the nurse could simply bring the inhaler to med-line so that he could use it and immediately return it. (*Id.*)

---

[1] Plaintiff's affidavit averment states that he arrived on September 30, 2024, but the chronology of events subsequent to his arrival suggests that he actually arrived on August 30, 2024. Later submissions confirm that arrival date. (First Am. Compl., ECF No. 4, PageID.20.)

[2] It is unlikely that Plaintiff expected to receive the inhaler that had been fashioned into a weapon; thus, it appears that Plaintiff hoped to receive his other inhaler with his property.

The nurse brought the inhaler during med-line on September 21, and Plaintiff used it and returned it. (*Id.*) The next day, however, Plaintiff was informed that "Pharmacy confiscated [the] inhaler until Plaintiff produces [his] old inhaler he can not use [a new inhaler]." (*Id.*) Because Plaintiff had no inhaler to return, he could not receive treatment from an inhaler during med-line.

Plaintiff reports that he typically experiences asthma attacks in the middle of the night more than three times a week. (*Id.*, PageID.3.) On September 25, Plaintiff filed a grievance against MBP Health Unit Manager Charles Scott, to no avail. (*Id.*)

On September 27, at 4:00 a.m., Plaintiff told MBP Sergeant Neubecker that he was suffering a bad asthma attack. (*Id.*, PageID.4.) Sergeant Neubecker indicated she would call health care. (*Id.*) Health care personnel never arrived. (*Id.*) Plaintiff claims that is the pattern when he complains of asthma attacks. (*Id.*)

On October 3, Plaintiff kited MBP Warden Schroeder and explained the problem. (*Id.*) That same day, Plaintiff filed his affidavit asking the Court to impose a preliminary injunction compelling Defendants Schroeder, Scott, and an unidentified MBP doctor to provide treatment, in the form of his prescribed medications, for Plaintiff's chronic asthma. (*Id.*) The Court construed Plaintiff's affidavit as a complaint.

[…]

In Plaintiff's first amended complaint, he fills the gaps between his arrival on August 30 and the receipt of his property on September 11, 2024. Plaintiff reports that on September 1, during morning med-line, he told Defendant Nurse Jenn that his asthma was flaring up due to the mace that remained in his hair from AMF. (*Id.*, PageID.20.) Nurse Jenn told Plaintiff that he would have to wait until he received his property and that there was nothing she could do because it was the weekend. (*Id.*) Plaintiff had an asthma attack that night; he used a brown paper bag to help him breathe. (*Id.*)

The following Monday, Plaintiff asked a corrections officer whether his property had arrived. (*Id.*, PageID.21.) It had not. (*Id.*) Plaintiff informed Nurse Jenn. (*Id.*) Plaintiff was told to wait for his property, but that if he had a bad asthma attack, to contact medical. (*Id.*) The next day, September 4, Plaintiff filled out a healthcare request form regarding his asthma and placed it "in [his] bars." (*Id.*) The next day it was gone, so he assumed it was picked up by medical staff. (*Id.*)

As reported in Plaintiff's affidavit, on September 11, Plaintiff received his property and discovered there was no inhaler. (*Id.*, PageID.22.) He complained to Defendant Jane Doe Nurse #1. (*Id.*) She told Plaintiff to "kite the doctor." (*Id.*) Plaintiff prepared a kite for the doctor and gave it to a corrections officer. (*Id.*)

On September 15, as noted in Plaintiff's initial affidavit, he submitted another healthcare kite requesting an inhaler. (*Id.*, PageID.22–23.) On September 19, during morning med-line, he complained to Defendant Jane Doe Nurse #2 about his nighttime asthma attacks. (*Id.*, PageID.23.) He informed her that he had sent numerous kites regarding an inhaler. (*Id.*) After med-line, he gave a corrections officer another kite for the doctor. (*Id.*)

As explained in Plaintiff's initiating affidavit, a nurse—Defendant Ashley—brought Plaintiff's inhaler to evening med-line. (*Id.*) But she did not give Plaintiff the inhaler. (*Id.*) She told him that he had to turn in his old inhaler to receive the new one. (*Id.*) Plaintiff explained why that was not possible and asked if the healthcare staff could bring the inhaler at med-line. (*Id.*) Defendant Ashley advised Plaintiff that she "would ask the R.N. . . . and let [Plaintiff] know at night med-line." (*Id.*, PageID.24.) At night med-line, Defendant Ashley let Plaintiff know that "the R.N.," who Plaintiff names as Defendant Unknown Supervisor #1, told Ashley that Plaintiff had to turn in an inhaler to receive one. (*Id.*)

On September 20, Defendant Nurse Diane brought an inhaler to evening med-line. (*Id.*) Plaintiff was permitted to use it. (*Id.*) He returned it to the nurse. (*Id.*) Plaintiff slept through that entire night. (*Id.*)

On September 21, at evening med-line, Plaintiff asked either Defendant Nurse Jenn or Defendant Nurse Diane if he could use the inhaler again. (*Id.*) The nurse explained that the pharmacy had "confiscated it." (*Id.*, PageID.25.) Plaintiff asked why. The nurse simply "shrugged her shoulders." (*Id.*) On September 25, Plaintiff completed a Step 1 grievance form regarding the matter and turned it in to non-party Resident Unit Manager Olivier. (*Id.*) The next day Plaintiff went to healthcare for a meeting with the dietician. (*Id.*) While he was out of his cell, his cell was "shook down." (*Id.*) Upon Plaintiff's return, he was strip searched by Defendants John Doe Sgt. #1 and John Doe Sgt. #2. (*Id.*, PageID.26.) Thereafter, he was moved to the showers, and his cell "was destroyed" by the sergeants and Defendant Assistant Resident Unit Supervisor Pressler. (*Id.*)

On September 27, at around 11:00 p.m., Plaintiff sought the assistance of his "neighbor," Jerome Hairston, because Plaintiff was having an asthma attack and was not able to catch the attention of Defendant John Doe C/O #1. (*Id.*) The combined efforts of Hairston and Plaintiff were not successful either (*Id.*) Eventually, Defendant John Doe C/O #1 "grew tired of Plaintiff and Ha[ir]ston and angrily yelled, 'inmates that assault staff don't get health care.'" (*Id.*)

Plaintiff continued to experience asthma attacks during that night. (*Id.*, PageID.27.) During the early morning hours of September 28, Defendant Lieutenant Nebecker made her rounds. (*Id.*) She opened Plaintiff's cell door because he had covered the bars with a blanket. (*Id.*) Using the blanket as a cover in that way is a violation of MDOC rules; Plaintiff explained that he did it "because he needed medical attention and was being ignored by [Defendant John Doe C/O #1]." (*Id.*) Defendant Nebecker agreed to "call medical." (*Id.*) Nonetheless, Plaintiff continued to suffer his asthma symptoms and no one came. (*Id.*) Plaintiff identifies the person who did not come as Defendant John/Jane Doe #3. (*Id.*)

On September 29, Plaintiff received a misconduct ticket for misuse of property, specifically for having a blanket on his bars. (*Id.*, PageID.28.) The ticket was written by Defendant Sergeant VanAcker. (*Id.*)

Plaintiff notes that on September 30, "healthcare" received Plaintiff's Step 1 grievance.[3] (*Id.*)

On October 3, Plaintiff kited Defendant Warden Schroeder complaining about not receiving treatment for his asthma and not receiving a receipt, response, or acknowledgement from Defendant Grievance Coordinator Q. Bolton. (*Id.*) Plaintiff also sent Defendant Schroeder another Step 1 grievance. (*Id.*) Plaintiff notes that he gave those mail communications to non-party Resident Unit Manager Olivier. (*Id.*) On that date, Plaintiff also mailed his affidavit to this Court seeking preliminary injunctive relief. (*Id.*)

---

[3] Later in the complaint, however, Plaintiff notes that Defendant Grievance Coordinator Q. Bolton received Plaintiff's grievance on September 30. (First Am. Compl., ECF No. 4, PageID.31.) Defendant Bolton did not respond until October 22, when he rejected the grievance. (*Id.*) Plaintiff also alleges that he has a separate pending case against Defendant Bolton for violation of Plaintiff's First Amendment rights. (*Id.*) Plaintiff also notes that Defendant Assistant Deputy Warden James is Defendant Bolton's supervisor. (*Id.*)

On October 15, during evening med-line, Plaintiff asked Defendant Nurse Sallie if he could get a breathing treatment because he was having frequent nighttime asthma attacks and the corrections officers would not call medical. (*Id.*, PageID.29.) Nurse Sallie agreed to ask the R.N. (*Id.*) Plaintiff did not receive any treatment, so he also names the R.N. that Nurse Sallie purportedly asked as Defendant Unknown Supervisor #2 (*Id.*)

On October 23, Plaintiff was examined with regard to his asthma condition. (*Id.*, PageID.30.) Defendant Nurse Christy asked Plaintiff whether he had any inhalers. (*Id.*) Plaintiff explained the trouble he had experienced obtaining treatment for his asthma attacks. (*Id.*) Nurse Christy said she would schedule a meeting with Defendant Dr. Falk and "they would be forced to give Plaintiff inhalers." (*Id.*) On October 25, a man stepped into Plaintiff's cell and asked if Plaintiff had any inhalers. (*Id.*) Plaintiff said no. The man stated, "I will order them for you." (*Id.*) On October 26, Plaintiff received his first inhaler. (*Id.*) On November 11, Plaintiff received his second inhaler. (*Id.*)

Finally, Plaintiff alleges that another prisoner spoke with Defendant Sergeant VanAcker. (*Id.*, PageID.32.) Defendant VanAcker wanted to verify with the other prisoner whether the facts that Plaintiff had purportedly told Defendant VanAcker about the August 30 incident at Baraga were true. (*Id.*) The other prisoner told Plaintiff that Defendant VanAcker explained that "Baraga wanted some retaliation." (*Id.*) Plaintiff notes that as of November 24, Defendant VanAcker has written two ticket against Plaintiff. (*Id.*)

ECF No. 17, PageID. 106-108.

### III.  Motion To Strike

As an initial matter, Plaintiff filed a sur-reply regarding the motion at issue. ECF No. 45.  Defendant argues that the Court should strike ECF No. 45 because Delaney did not seek leave from the Court to file a sur-reply and the sur-reply contests issues "largely ignored" in Plaintiff's response to Defendant's motion to dismiss.  ECF No. 47, PageID.258.

This Court's Local Civil Rules allow for a response to a dispositive motion and

then a reply to the response.   W.D. Mich. LCivR 7.2(c).   "The court may permit or require further briefing."   *Id.*   This Court has noted that "[i]t is well-established that parties do not have a right to file a sur-reply brief, whether under the Federal Rules of Civil Procedure or the Local Civil Rules of our district, and both this court and other federal courts rarely grant leave to file a surreply."   *Aslani v. Sparrow Health Sys.*, No. 1:08-CV-298, 2009 WL 3711602, at *22 (W.D. Mich. Nov. 3, 2009) (footnote omitted).   The Court may grant leave to file a sur-reply to afford a party an opportunity to address new issues raised for the first time in the reply.   *Eldridge v. Cardif Life Ins. Co.*, 266 F.R.D. 173, 175 (N.D. Ohio 2010).

Here, Delaney's sur-reply focuses on the timeliness of his grievance and the severity of his medical needs.   ECF No. 45, PageID.249-252.   Plaintiff's sur-reply supplements the arguments presented in his response, ECF No. 42, and addresses arguments presented in Defendant's reply, ECF No. 44.   Considering Plaintiff's *pro se* status and the relevance of the arguments presented, the undersigned accepts Plaintiff's sur-reply.   Accordingly, Defendant's motion to strike Plaintiff's sur-reply is respectfully **denied**.

### IV. Motion to Dismiss Standard

The Federal Rules provide that a claim may be dismissed for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).   Put differently, if plaintiffs

do "not nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In determining whether a claim has facial plausibility, a court must construe the complaint in the light most favorable to the plaintiff, accept the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Those factual allegations "must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (internal citations omitted). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.*

Plaintiff is proceeding *pro se*. As such, his pleadings are subject to less stringent standards than those prepared by attorneys. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972).

**V. Analysis**

Defendant Roberts argues that Delaney's case should be dismissed because he failed to pursue any grievances through Step III before filing this lawsuit.    ECF No. 38, PageID. 213.

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies.    *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).   A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.    *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.    *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).    "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"    *Jones*, 549 U.S. at 218-19.   In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."    *Ross v. Blake*, 578 U.S.

632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524.   In the Court's view, this objective was achieved in three ways.   First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."   *Id.* at 525.   Second, "the internal review might 'filter out some frivolous claims.'"   *Id.* (quoting *Booth*, 532 U.S. at 737*)*.   And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration.   *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The undersigned usually considers the issue of exhaustion at the summary judgment stage.   However, Courts in this District have previously stated that it is appropriate for defendants in a prisoner civil rights action to raise the affirmative defense of failure to exhaust administrative remedies in a motion to dismiss.   *Jones v. Tudor*, No. 1:08-cv-300, 2009 WL 2595575 at *6 (W.D. Mich. Aug. 20,2009) (citing *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008)). To decide a motion to dismiss, the Court may take judicial notice of a plaintiff's MDOC grievance filings. *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (a court may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion, but

may only take judicial notice of facts which are not subject to reasonable dispute); *Walker v. Abdellatif,* No. 1:07–cv–1267, 2009 WL 579394 (W.D.Mich. March 5, 2009) (taking judicial notice of MDOC prisoner grievance proceedings in deciding motion to dismiss for lack of exhaustion).

Here, Defendant Roberts argues that it is abundantly clear that Delaney failed to exhaust because the events at issue allegedly occurred too close in time to when he filed his Complaint, not leaving any possible time to complete the grievance process. ECF No. 38, PageID.210. Further, Roberts asserts that Delaney did not file a grievance until September 30, 2024, ten days late under the MDOC grievance process. *Id.*, PageID.211.

Roberts has not included Delaney's Step III grievance records or the MDOC Policy Directive on exhaustion. However, the policy is publicly available, and this Court has referenced it in numerous previous exhaustion decisions.

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective September 25, 2023) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to informally resolve a grievable issue within **two business days** of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ W. If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.* at ¶¶ W, CC. The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.*

at ¶ CC.    The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely.    Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).    Dates, times, places and names of all those involved in the issue being grieved are to be included."    *Id.* at ¶ Y (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within **ten business days** of the response, or if no response was received, within ten days after the response was due.    MDOC Policy Directive 03.02.130 at ¶¶ JJ.    The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances.    *Id.* at ¶ LL.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ NN.    The Step III form shall be sent within **ten business days** after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.    *Id.*    The Grievance Section is the respondent for Step III grievances on behalf of the MDOC director.    *Id.* at ¶ OO.

Here, in both the initial and amended complaints, Delaney asserts that he was first denied an inhaler on September 19, 2024.    ECF No. 1, PageID.2; ECF No. 4, PageID.22.    Delaney filed this lawsuit on October 11, 2024 – 22 days after the first alleged incident occurred.    Delaney filed his Amended Complaint on December 2,

13

2024.   ECF No. 4.   However, a prisoner "may not exhaust administrative remedies during the pendency of the federal lawsuit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).   Similarly, this Court has explained that "a prisoner may not save the cause of action by exhausting new claims asserted in an amended complaint after the date he filed his original complaint." *Cain v. Moran*, No. 2:22-cv-00229, 2023 WL 9064520 at *5 (W.D. Mich. Oct. 26, 2023) (*citing Mattox v. Edelman*, 851 F. 3d 583, 593 (6th Cir. 2017), *report and recommendation adopted*, No. 2:22-CV-229, 2023 WL 8539738 (W.D. Mich. Dec. 11, 2023).   Thus, the operative date is October 11, 2024, and twenty-two days is simply an insufficient amount of time to complete the grievance process and exhaust the available administrative remedies.

Delaney argues that he filed the original "affidavit for injunctive relief" so quickly because he was "one bad asthma attack away from death and he needed the intervention of a higher authority then the MDOC officials responsible for his health." ECF No. 42, PageID.237.   Although the Court is sympathetic to Plaintiff's medical needs, the Sixth Circuit has explained that that imminent medical need is not a sufficient excuse for not exhausting his administrative remedies before filing the present action.   *Arbuckle v. Bouchard*, 92 Fed. Appx. 289, 291 (6th Cir. 2004) (citing 42 U.S.C. § 1997e) ("The PLRA does not excuse exhaustion for prisoners under imminent danger of serious physical injury.").

Accordingly, in the opinion of the undersigned, Delaney failed to exhaust his administrative remedies before filing this action.

## VI.    Recommendation

In the opinion of the undersigned, Delaney's Complaint is facially implausible because there was not enough time between the alleged conduct and the filing of this lawsuit for Delaney to exhaust his administrative remedies.    Therefore, it is respectfully recommended that the Court grant Defendant Roberts motion to dismiss. If the Court accepts this recommendation. Delaney's Eighth Amendment deliberate indifference claims against Defendants John Doe C/O #1 and Unknown Supervisor #1 will remain in the case.

Dated:    April 15, 2026                          /s/ *Maarten Vermaat*
                                            MAARTEN VERMAAT
                                            U.S. MAGISTRATE JUDGE


## NOTICE TO PARTIES

Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.    28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).    Failure to file timely objections constitutes a waiver of any further right to appeal.    *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).    *See also Thomas v. Arn*, 474 U.S. 140 (1985).